OLVIN RAYMOND & Wife *vs.* NATHANIEL HOLDEN, JR.

Where a husband made a conveyance of his wife's real estate, in fee, with the usual covenants of warranty, and the wife joined in the execution of the deed, " in token of her relinquishment of her right of dower in the premises," and the grantee and subsequent purchasers under him occupied the estate so conveyed, and exercised the ordinary acts of ownership upon it for more than twenty-nine years without any claim or interruption, on the part of the wife or her heirs : — it was held, 1st, that these facts were not sufficient to authorize the presumption of a grant from the wife or her heirs ; and, 2d, that her heirs were not thereby estopped to deny, that the title in fee was not in the husband, at the time of making such conveyance.

The demandant in a real action can only recover on a legal and not on an equitable title.

THIS was a real action, brought to recover one undivided sixth part of a tract of wood land in Shirley, containing fourteen acres and thirty-one rods. The writ is dated May 26, 1846. The demandants aver seizin in themselves, in right of the wife.

The cause was tried before *Shaw*, C. J., from whose report thereof, for the consideration of the whole court, the following facts appeared.

Simon Tuttle, grandfather of the female demandant, died seized of certain real estate, of which partition was made among his heirs, six in number, under the authority of the probate court, on the 28th of December, 1816. The commissioners, being of opinion that the real estate could not be divided into more than two parts without injury, assigned three shares, or one half of the estate, to one of the heirs, Lucy Fletcher, wife of Joseph Fletcher, on condition that she should pay Rebecca Conant and Charles Tuttle, two of the other heirs, the sum of $185 each. Joseph Fletcher gave a bond for the payment of these shares, which was filed in the probate court on the same day ; and the shares were accordingly paid by him, as appeared by the receipts of the parties, one of which was attested by Nancy Fletcher, the female demandant.

At the time the partition was made, Joseph Fletcher re-

quested that the two additional shares, which were assigned to his wife, might be assigned to him; but was informed by the judge of probate, that it could not be done; his wife and not he being the heir, and entitled to take the estate under the statute.

The estate thus assigned to Lucy Fletcher consisted of three lots of land, namely, a lot in Acton, appraised at $270; twenty-four acres of woodland in Shirley, appraised at $195; and an old field of twenty acres, in Shirley, appraised at $90. Her share of the personal estate was $22·68.

On the 28th of March, 1817, Joseph Fletcher, by a deed of that date, recorded January 6th, 1819, for the consideration of $143·75, conveyed to Nathaniel Holden fourteen acres and sixty rods, parcel of the twenty-four acres of wood land in Shirley, with full covenants of warranty. The deed was also executed by Lucy Fletcher, who joined therein with the grantor, " in token of her relinquishment of her right of dower in the premises; " and it was attested by Olvin Raymond, one of the demandants.

The remaining ten acres of wood land in Shirley, and the twenty acres of old field, were conveyed by Joseph Fletcher, on the same 28th of March, 1817, to Jesse Farnsworth, by a deed bearing that date, recorded May 20th, 1820, containing full covenants of warranty, and a release of dower by Lucy Fletcher, and attested also by the demandant, Olvin Raymond. The lands thus conveyed were afterwards mortgaged by Jesse Farnsworth, and also conveyed by him, and were occupied by Farnsworth and the several subsequent grantees thereof, in the manner hereinafter described.

The lot of land in Acton, which was assigned, as above mentioned, to Lucy Fletcher, was retained and occupied by Joseph Fletcher, until his death.

On the 1st of April, 1817, Nathaniel Holden, by a deed of that date, recorded May 23d, 1823, for the consideration of $71·87, conveyed seven acres and thirty rods, being one half, of the land conveyed to him, as above stated, by Joseph

Fletcher, to Amos Day, with full covenants of warranty and
a release of dower.

On the 17th of September, 1817, Lucy Fletcher died, leav-
ing seven children, one of whom dying under age and un-
married, the remaining six became the legal heirs of her real
estate.   Nancy Fletcher, one of the heirs of Lucy Fletcher,
and her husband, Olvin Raymond, are the demandants in this
case.

On the 30th of December, 1833, Nathaniel Holden, by a
deed of that date, recorded April 17, 1835, for a full consid-
eration, conveyed the other half of the land conveyed to him
as already stated by Joseph Fletcher, being the premises de-
manded in this action, to Nathaniel Holden, jr., the tenant.

All the land in Shirley, which was assigned to Lucy
Fletcher, and conveyed by her husband, as above mentioned,
was occupied and improved from the 1st of April, 1817, to
the commencement of this action, by the cutting of wood,
the erecting of buildings and fences, and by such other acts
of use and enjoyment, as indicate an adverse occupation and
an ownership in fee.   During the same time, also, the heirs
of Lucy Fletcher, or some of them, lived in the same town
with Joseph Fletcher, and adjoining the town in which the
land lies, and no claim or interruption of such possession was
made by them, until the bringing of this suit.

Joseph Fletcher survived his wife, and took a life estate,
as tenant by the curtesy, in all her real estate, including the
demanded premises, and died in 1844.

The tenant contended, 1st, that, although by the petition
of Simon Tuttle's estate, the legal estate in one moiety
thereof vested in the wife of Joseph Fletcher, yet, as to the
two shares assigned to her, if the money payable thereupon
was paid by her husband, the law would presume a resulting
trust in the estate for him, and from the lapse of time, the
jury might presume a conveyance from the trustee to the *ces-
tui que trust*.

2d, That, from the lapse of time, — the use made of the

estate by Joseph Fletcher and his grantees — and the act of the wife in releasing dower, — a grant might be presumed from Fletcher's wife so as to vest the estate in him.

3d, That the act of the wife in joining with the husband by a release of dower, without notice of her title, was a fraud, and worked an estoppel *in pais* against her and her heirs.

The cause was continued by consent, for the consideration of the whole court.

If the court shall be of opinion, that the evidence, as above stated, shows a good title in the tenant, under a grant, through intermediate conveyances, from Joseph Fletcher, the plaintiffs are to become nonsuit, and judgment is to be entered for the tenant.

If not, but the court shall be of opinion, that the evidence offered was competent to go to the jury, and sufficient to warrant a presumption of a non-appearing grant, by which the legal estate was vested in Joseph Fletcher, or to establish an estoppel *in pais*, against the heirs of Lucy Fletcher, a new trial is to be ordered.

If neither, the tenant is to be defaulted, and judgment to be entered for the demandants.

*E. R. Hoar*, for the tenant.

*G. F. Farley* and *B. Russell*, for the demandants.

DEWEY, J. The case, presented by the paper title, which was exhibited on the trial, is *prima facie* in favor of the plaintiffs. The estate in question originally belonged to Simon Tuttle, from whom it passed to his children, as his heirs at law ; and, under the authority vested in the judge of probate, it was assigned to Lucy Fletcher, one of the heirs; through whom, the plaintiffs derive the title upon which they found their claim. It is contended, however, that the real estate assigned to Lucy Fletcher by the judge of probate was held by her, at least, to a certain extent, in trust for her husband, Joseph Fletcher. It is supposed to be so held, by reason of the payment made by him, to two of the co-heirs of his wife, of the appraised value of the shares belonging to them, which were assigned to her. It is said, that this payment raises a

resulting trust, upon the principle, that where money is advanced by one person for the purchase of real estate, and a deed is taken in the name of another, the grantee holds the estate as a trustee for the person who advances the purchase money.

Without stopping to inquire, how far this doctrine would apply to the case of money advanced by a husband, and a conveyance taken in the name of the wife, — or, whether, in the case of a payment of the purchase money by a father, and a conveyance taken in the name of his child, it would be considered as an intended gratuity or gift, — or whether such resulting trust could be raised, where in truth there was no conveyance, but a mere right acquired by partition among heirs, under the authority of the probate court, — it is sufficient to say, that if this be the case of a resulting trust, in favor of the husband, yet the legal estate vested in the wife and her heirs, and, in a court of law, the legal estate must be taken to be the title, and as such must here prevail.

The only ground, therefore, which is open to the defendant, is that of a presumed grant or conveyance of the estate from Lucy Fletcher or her heirs; which is equally necessary, whether the case is to be treated as one in which there is a resulting trust, or as the naked case of an estate held at some former period by Lucy Fletcher in her own right. The only real question in the case is, whether, in the proposed evidence, there is sufficient to warrant the presumption of a non-appearing grant or conveyance, by which the legal estate was vested in Joseph Fletcher. The defendant insists that the conveyance of the estate by Joseph Fletcher, in 1817, — the several subsequent conveyances, — the act of the wife in releasing her dower, — the manner in which the estate has been occupied, — all tend to establish such a presumption; and that these acts are only consistent with the supposition, that, at some period subsequent to the assignment by the judge of probate to Lucy Fletcher, she and her husband conveyed her estate to a third person, by whom it was afterwards conveyed to Joseph Fletcher, or, if not so conveyed by a deed from

Lucy Fletcher and her husband, that it was conveyed to Joseph Fletcher by her heirs at law.

The case, which is most strongly relied upon by the defendant, as an authority, is that of *Melvin* v. *Locks and Canals*, 16 Pick. 137, and 17 Pick. 255. The facts in the present case fully show, that, by virtue of the assignment to Lucy Fletcher, her husband became seized of a freehold for his own life, and that, by force of the conveyance from him, his grantee acquired a right to the possession of the premises for the same period. During the life of Joseph Fletcher, therefore, the right of possession was absolute in his grantee ; and the children of Lucy Fletcher could not interfere with the occupation of the premises, by such grantee, or those holding under him. Upon these facts, if standing alone, there would not, according to the doctrine of *Melvin* v. *Locks and Canals*, be sufficient evidence to warrant the presumption of a grant from Lucy Fletcher.

It was supposed, however, in the case of *Melvin* v. *Locks and Canals*, that there were certain other facts, which might authorize the presumption of such a grant. After the title of Mrs. Melvin accrued, a period of six years elapsed, before her marriage. She also lived forty-four years after the conveyance made by her husband. In the present case, the estate descended to the wife during coverture, which, of course, forbids any inference of a conveyance by her before her marriage. Her death, also, occurred within nine months after the title accrued to her, thus limiting the period for a conveyance by her to a short space of time. In the case of *Melvin* v. *Locks and Canals*, five years elapsed between the marriage and the conveyance by the husband; while, in the present case, three months only elapsed between the accruing of the title in Lucy Fletcher and the conveyance by her husband. But the more material circumstance, without which, probably, the court would not have sustained a verdict for the defendants, was, that Melvin, the husband, conveyed by his deed the entire estate in the premises. The wife's interest, upon the plaintiff's hypothesis, was only one undivided

23 *

moiety, and the other moiety was held by a Mrs. Kittredge, whose title Melvin had no right to convey for any period of time, provided his only title was the estate he held in the right of his wife, or merely as tenant by the curtesy; and thus the possession of those claiming under Melvin was at all times unlawful and might have been resisted. This was a case, therefore, where the present possession, but for the existence of a deed of conveyance, would have been unlawful. It was a possession of about fifty years' continuance. Under all these circumstances, it was held, in that case, that the evidence was sufficient to authorize the jury to presume a lost deed. But, in the case now before the court, we think that the facts relied upon would not authorize the jury to presume a grant from Lucy Fletcher or her heirs.

The remaining question is, whether, by reason of the signature of Lucy Fletcher to the deed executed by her husband to Nathaniel Holden, on the 28th of March, 1817, her heirs are estopped to deny, that the title in fee of the demanded premises was in Joseph Fletcher, the grantor, at the time of the making of that conveyance. This was a deed from Joseph Fletcher, with covenants of warranty, in which Lucy Fletcher, "in token of relinquishment of her right of dower in the premises," joined under her hand and seal. The principles of estoppel cannot be properly applied to the present case. It may be true, as stated in 1 Story's Eq. Jur. § 385, "that neither infancy nor coverture will constitute any excuse for a party guilty of concealment or misrepresentation, for neither infants nor femes covert are privileged to practise deception or cheats on others." We cannot infer, however, from the act of Lucy Fletcher, in releasing her right of dower, in the manner above stated, that she was guilty of a fraud upon the grantee or that she designedly misled him. Her signature, being given to a writing which fully stated its purpose, may be considered as honestly made, and in ignorance of her title. I am aware, that, in equity, ignorance of title is not always deemed sufficient to excuse a party, who actually misleads a purchaser by his concealment or misrepresentation. But we

cannot think, that the mere act of signing a deed, releasing her right of dower in certain premises conveyed by her husband, can be held, in a court of law, to constitute a legal estoppel to prevent her heirs from claiming to hold an estate in fee in the premises, by descent from her. In the case of *Bruce* v. *Wood*, 1 Met. 542, the husband made a conveyance of land, of which he and his wife were seized in her right, and she joined in the conveyance, with this recital : " In testimony whereof, I the said J. B., and J. M. B., wife of the said J. B., in token that I relinquish all my right in said bargained premises, have hereunto set our hands and seals," &c. ; and this was held not to be sufficient to bind the wife, or to preclude her from recovering the land, after the death of her husband. If such a signature was held insufficient to estop the wife, it would seem, that a signature of a more limited import, and confined in terms to a release of dower, ought not to operate as a bar to the party thus giving her signature. The present does not seem to us to be a case, in which the principle of estoppel should be held to apply. Such being the case, and a legal title being clearly shown in the demandants, judgment must be entered for them.